UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICE JOHNSON, ET AL.                                             CIVIL ACTION

VERSUS                                                              NO. 10-1660-SS

CITY OF GRETNA, ET AL.

**ORDER AND REASONS**

Plaintiffs, Patrice Johnson and Joseph Johnson, Sr., a married couple, filed this civil action against the City of Gretna and World Wide Import & Export, L.L.C. Plaintiffs allege that, on April 20, 2010, Mrs. Johnson went to the E-Z Wireless store to restore service on a prepaid cellular telephone. When informed by a store employee that there was an additional $2.00 service charge to use a debit card, she refused to pay and left the premises. The police were called and, shortly thereafter, while in another part of the mall shopping center, Mrs. Johnson was confronted by Gretna police officers, one of whom told her that she would be taken to jail unless she paid the disputed charge at the E-Z Wireless store. She paid the charge and was allowed to leave.

In this lawsuit, plaintiffs claimed that Mrs. Johnson was wrongfully seized by the Gretna police officers in violation of her rights under the United States Constitution. They also asserted

various state law claims against the City and World Wide Import & Export, L.L.C.,[1] based on the incident.[2]

The City of Gretna has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[3] Plaintiffs have opposed that motion,[4] and the City has filed a reply to that opposition.[5] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[6]

I. Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it

---

[1] World Wide Import & Export, L.L.C., allegedly operates the E-Z Wireless store. The plaintiffs also originally listed an additional "John Doe" defendant; however, the complaint was never amended to properly identify that defendant.

[2] The claims against World Wide Import & Export, L.L.C., have since been resolved by way of compromise.

[3] Rec. Doc. 27.

[4] Rec. Doc. 24.

[5] Rec. Doc. 31.

[6] Rec. Doc. 23.

believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II.  Federal Claim Against the City of Gretna

Plaintiffs claim that the City of Gretna, as a result of its failure to properly train its police officer, violated Mrs. Johnson's federal constitution right to be free from unlawful seizure. Regarding such "failure-to-train" claims against a municipality, the United State Supreme Court recently explained:

> Title 42 U.S.C. § 1983 provides in relevant part:
>
> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress ...."

A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing Monell, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. See id., at 691, 98 S.Ct. 2018; Canton, 489 U.S., at 392, 109 S.Ct. 1197; Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691, 98 S.Ct. 2018; see id., at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See ibid.; Pembaur, *supra*, at 480–481, 106 S.Ct. 1292; Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." Pembaur, *supra*, at 479–480, 106 S.Ct. 1292.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Canton, 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id., at 389, 109 S.Ct. 1197.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cty., 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. Id., at 407, 117 S.Ct. 1382. The city's "policy of inaction" in light of notice that its

program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." Canton, 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...." Id., at 392, 109 S.Ct. 1197; see also Pembaur, *supra*, at 483, 106 S.Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

Connick v. Thompson, 131 S.Ct. 1350, 1358-60 (2011).

The Supreme Court further noted:

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409, 117 S.Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Id., at 407, 117 S.Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

Connick, 131 S.Ct. at 1360.

Even if the Court assumes *arguendo* that Mrs. Johnson's rights were violated by the officer's actions, which is an issue this Court need not and does not reach for the purposes of this decision, she has not alleged that a pattern of similar violations exists.

That, however, does not end the Court's inquiry, because, in very limited circumstances, a "failure-to-train" claim can be premised on a single incident. The Supreme Court explained:

> In Canton, the Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. Bryan Cty., *supra*, at 409, 117 S.Ct. 1382. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Canton, *supra*,

>at 390, n. 10, 109 S.Ct. 1197.  Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. Bryan Cty., *supra*, at 409, 117 S.Ct. 1382.  The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

Connick, 131 S.Ct. at 1361.

However, still, as with any "failure-to-train" claim, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." City of Canton v. Harris, 489 U.S. 378, 390 (1989).  Further, the Supreme Court has cautioned:

>That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. See Springfield v. Kibbe, 480 U.S., at 268, 107 S.Ct., at 1120 (O'CONNOR, J., dissenting); Oklahoma City v. Tuttle, *supra*, 471 U.S., at 821, 105 S.Ct., at 2435 (opinion of REHNQUIST, J.).  It may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.  And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.
>    Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

Canton, 489 U.S. at 390-91.

Here, plaintiffs have presented no evidence as to the individual officer's training. Instead, their claim is premised on nothing more than an unsupported opinion that the officer must not have been adequately trained on probable cause and arrest procedures because, had he been, he would

have known that probable cause did not exist to threaten Mrs. Johnson with arrest. Mrs. Johnson acknowledged as much in her deposition:

> Q. I'm going to ask you a hard one now. The rest of them have been pretty easy so far. Paragraph Number 42 [of the federal complaint] says, "The actions of Defendant Doe," which I presume to be police officer Doe, "complained of herein result from the Defendant, City of Gretna's failure to train Defendant Doe in proper police procedure." What evidence do you have that the City of Gretna fails to train their officers?
>
> A. The verbal conversation inside the EZ Wireless.
>
> Q. So isn't it just as likely that the officer was trained properly but didn't follow his training?
>
> A. That's correct.
>
> Q. So you don't have any evidence to suggest that the Gretna Police Department doesn't train, what you have evidence of is your position that even if he was trained, he didn't follow his training?
>
> A. Correct.[7]

That is precisely the unwarranted leap of logic against which the Supreme Court expressly warned.

In summary, plaintiffs have offered no evidence whatsoever that the City's training was inadequate or that such inadequate training was a "moving force" behind the officer's actions in the instant case. Therefore, the City is entitled to summary judgment on plaintiffs' § 1983 "failure-to-train" claim.[8]

---

[7] Rec. Doc. 27-3, Deposition of Patrice Johnson, p. 51.

[8] At this juncture the Court must note that, because plaintiffs' complaint is hardly a model of precise drafting, it is unclear whether plaintiffs are asserting a Monell claim separate and distinct from the "failure-to-train" claim. However, if that was their intent, that additional claim fares no better. The United States Fifth Circuit Court of Appeals has explained that, as with all such claims,

> [i]n order to hold a municipality or a local government unit liable under Section 1983

III.  State Law Claims

All of plaintiffs' remaining claims are state law claims.  Because plaintiffs' federal claim is being dismissed, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

---

> for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact for the deprivation of the rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted; emphasis added).  "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); McCloud v. Craig, Civ. Action No. 09-3287, 2009 WL 2515609, at *6 (E.D. La. Aug. 17, 2009).  Rather, she must *identify* the policy or custom which allegedly caused the deprivation of her constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); McCloud, 2009 WL 2515609, at *6.  Plaintiffs have not identified a custom or *de facto* policy of the City which tolerates threats by its police officers to arrest individuals without probable cause or to force such individuals upon threat of arrest to make immediate restitution to private businesses for the alleged theft of goods or services.

The Court expressly declines any invitation to retain jurisdiction to resolve plaintiffs' state law claims. Plaintiffs are not harmed by requiring them to pursue their state law claims in state court, in that the limitations period for such claims was tolled during the pendency of this proceeding, see 28 U.S.C. § 1367(d), and in that any discovery and efforts in this Court will aid them in pursuing their claims in state court if they so choose. Because plaintiffs lacked a viable federal claim, they should have filed their claims in state court, and they are not prejudiced by a requirement that they do now what they should have done originally.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to plaintiffs' federal law claim against the City of Gretna, and that claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** with respect to plaintiffs' state law claims against the City of Gretna.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims against all defendants are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this thirty-first day of May, 2011.

                                                **SALLY SHUSHAN**
                                                **UNITED STATES MAGISTRATE JUDGE**